■ In the Matter of MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Respondent, v THOMAS CULLINGTON, an Infant, by His Parent, ANITA CULLINGTON, Respondent, and BOSTON OLD COLONY INSURANCE COMPANY, Appellant. (And a Second Caption.)—In a proceeding to stay arbitration, in which the issue is which of two insurers is liable for the payment of first-party no-fault benefits to an injured pedestrian pursuant to article 18 of the Insurance Law, the appeal, as limited by appellant's brief, is from so much of an order of the Supreme Court, Nassau County, entered December 21, 1976, as, after a hearing, determined that the insurer of the owner of the stolen vehicle which struck the injured pedestrian was liable for the payment of the benefits, vacated a stay of arbitration which had previously been granted to the owner's insurer and directed that the parties proceed to arbitration in the event that the said insurer resists payment. Order affirmed insofar as appealed from, with one bill of costs jointly to respondents appearing separately and filing separate briefs. The Comprehensive Automobile Insurance Reparations Act (Insurance Law, § 670 *et seq.)* is designed to provide first-party compensation for basic economic loss result-

ing from injuries occasioned by the use or operation of an insured motor vehicle regardless of fault *(Montgomery v Daniels,* 38 NY2d 41). The only issue here is whether the subject vehicle was an insured vehicle for the purposes of no-fault coverage. The owner of the vehicle was insured by a policy which contained the mandatory personal injury protection (PIP) endorsement, which provides no-fault coverage, as required by article 18 of the Insurance Law. However, at the time of the accident the subject vehicle had been stolen and was being operated by an unknown and unauthorized person. It is undisputed that the injured pedestrian is a covered person within the purview of the statute. Subdivision 9 of section 671 of the Insurance Law defines an uninsured motor vehicle as a "motor vehicle, the owner of which is (a) a financially irresponsible motorist * * * or (b) unknown and whose identity is unascertainable." This definition makes the determination of whether a vehicle is uninsured entirely dependent upon the status of the vehicle's owner. The term owner is a nontechnical term and its ordinary meaning is simply that person who has legal or equitable title. Neither the statute nor the term's ordinary meaning refers to operation or control as qualifications on ownership. The terms operation and control represent concepts distinct from ownership and are usually used in their negative forms to defeat common-law tort liability. Under the common law, an owner who has neither operation nor control of a vehicle at the time of an accident, is deemed to be not at fault. However, no-fault insurance is designed to provide compensation regardless of fault and therefore the common-law rationale concerning operation and control is inapplicable. That this necessarily works a modification on traditional concepts of tort law is of no consequence (see *Montgomery v Daniels, supra).* Since the clear language of the statute refers solely to ownership of the subject vehicle, the vehicle which injured the pedestrian, although stolen, is an insured motor vehicle for purposes of no-fault compensation pursuant to article 18 of the Insurance Law. It is also contended that since the main portion of the policy issued by the appellant defines insured motor vehicle as a vehicle driven with the permission of its owner, there is no coverage in the instant situation. This argument is entirely without merit. The appellant's policy contains the mandatory personal injury protection endorsement, in accordance with article 18 of the Insurance Law. The PIP endorsement is internally complete and is a distinct part of the insurance policy. The coverage provided for in the PIP endorsement cannot be qualified by the inapplicable conditions and exclusions of the liability portion of the policy. This is especially true if the effect of those qualifications would be contrary to the legislative intent, as expressed by the clear language of the statute as interpreted above. Hopkins, J. P., Cohalan, Margett and Hawkins, JJ., concur.